M38PSARA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                      22 CR 116 (NRB)

CARMINE SARNELLI,

         Defendant.

------------------------------x

                              New York, N.Y.
                              March 8, 2022
                              11:15 a.m.

Before:

            HON. NAOMI REICE BUCHWALD,

                        District Judge

                APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
BY:  DAVID ROBLES
    EMILY JOHNSON
    Assistant United States Attorneys

SKADDEN ARPS
    Attorneys for Defendant
BY:  CHRISTOPHER GUNTHER

M38PSARA

(In open court)

THE COURT:  Good morning.  Everyone may be seated.

(Case called).

MR. ROBLES:  Good morning, your Honor.  David Robles and Emily Johnson for the government.

THE COURT:  Good morning.

MR. GUNTHER:  Good morning, your Honor.  Christopher Gunther on behalf of Carmine Sarnelli.

THE COURT:  Good morning, Mr. Sarnelli.

THE DEFENDANT:  Good morning, your Honor.

THE COURT:  All right.  As I understand it, the purpose of today's proceeding is to arraign Mr. Sarnelli on the indictment in this case.  Is that correct, counsel?

MR. ROBLES:  That is correct, your Honor.

THE COURT:  Okay.  But also, before we do that, Mr. Sarnelli, I have your letter of February 19th in which you -- so three letters, in which you make a number of requests.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And I wondered if before I came on the bench that you had a chance to speak to Mr. Gunther --

THE DEFENDANT:  Yes.

THE COURT:  -- and resolve whatever concerns you had?

THE DEFENDANT:  Well, I still would like to change my attorney, your Honor.

M38PSARA

THE COURT:  Mr. Sarnelli, I believe, if I'm right, that the Skadden Arps firm has been representing you for a number of months; is that right?

MR. GUNTHER:  Yes, your Honor.

THE COURT:  Okay.  And I don't know, I mean, you know, in the end, I will always change a defendant's lawyer one time, but I don't know if you have any awareness of the basic quality of the law firm that is representing you without any cost to you.  You know, the partners at this firm charge clients like over $1,000 an hour for their time and, you know, that's not by accident.  There's a tremendous amount of background and skill and education that people have before they can become a partner at a firm like Skadden Arps.

So if it were me and that was what I was getting for nothing, I'd be very reluctant to change counsel.  And I have the feeling that they've already done some good work for you here.

THE DEFENDANT:  They did, your Honor, and I made a couple of demands, and they just ignored me, and I wasn't too happy with that.

THE COURT:  I don't know what the demands are, but as a general matter, your counsel went to law school and you did not, as a general rule.  There may be -- there may be some communication issue, but it is not necessarily effective lawyering for the lawyer to always listen to the defendant.

M38PSARA

There are certain things which are absolutely your decision.  They never make it.  Pleading guilty, pleading not guilty, your decision.  If there was a trial, whether you testified or not, totally in the end, your decision.  No question.

But there are a lot of other smaller decisions along the way, and a lot of times those small decisions -- not as big as guilty or not guilty -- have strategic value and are important for a long-term game plan.

And there are times when a client may ask a lawyer to do something, and the lawyer knows not only is the answer of the Court going to be no, in the end, but that it may be harmful for one reason or another to even try.

So I think that, as I understand it because there was an appointment of counsel issue, so I got to know a little bit more about the representation of Skadden, that you have a number of lawyers there working on your case.  Is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You know, that is unusual and special, and it's only because it's such a large firm that you're getting that kind of service.  In the end, there's no requirement that you have a team of lawyers.  If I change lawyers, it may just be one lawyer working by himself.  You have a team.

I would just say, in the end, it's your decision, but I would really urge you, before you give up this level of, you

M38PSARA

know, excellence, when you're really talking about one of the top law firms in the entire city, that you spend some more time talking to Mr. Gunther because I think he's sort of newer to the case, and seeing if you can work out some of these things.

If, in the end, you can't, I'll change your lawyer one time, but if you don't like the next one, too bad because the law does not require me to give you a lawyer that you like. It requires me to give you effective assistance. These guys are effective. No court will ever rule otherwise, and they are members of our Criminal Justice Act panel.

Our Criminal Justice Act panel is selected by the court. We have many more lawyers that apply to be members of the panel than we have spots, and if a lawyer does not perform to the level that the court expects them, they are removed from the panel. So anybody that's on the panel is someone that I, and every other judge, can have confidence in because we want you to be well represented.

We want to make sure that whatever rulings we make, whatever sentence we give, that that defendant has been well represented. It's important, personally and institutionally, to this court. So are you willing to, you know, give him a second shot?

THE DEFENDANT: Well, your Honor, I have nothing against him or them, or it's just her in particular.

THE COURT: Who?

M38PSARA

THE DEFENDANT:  Jocelyn.

THE COURT:  Well, she's gone.

THE DEFENDANT:  That has nothing against Christopher.

THE COURT:  Well, Jocelyn has resigned from the firm because she's becoming the head, I think it's the Department of Investigations --

MR. GUNTHER:  That's right.

THE COURT:  -- for the City of New York.  She's gotten a promotion from the new mayor.  She is not your problem.  She has nothing on this case.  She will never be on this case.  She has another job.  She can't be your lawyer.  Does that solve the whole thing?

THE DEFENDANT:  That's fine.

THE COURT:  I mean, I had to say all those words and that was the sole problem?  Well, okay.  In any event, a small education.

Sir, why don't you all just sit down, and let's do the business that we were originally here to do.

Okay.  Mr. Gunther, have you received and has Mr. Sarnelli received a copy of the indictment in this case?

MR. GUNTHER:  Yes, your Honor.

THE COURT:  And have you had the chance to review that indictment with him?

MR. GUNTHER:  Yes.

THE COURT:  Okay.  And, Mr. Sarnelli, how do you plead

M38PSARA

with respect to the indictment, guilty or not guilty?

THE DEFENDANT:  Not guilty, your Honor.

THE COURT:  Okay.  So have counsel had a chance to discuss a schedule in this case?

MR. ROBLES:  Your Honor, we have not.  The government has reached out to defense counsel with a proposed protective order for discovery.  We're starting those conversations about that.  The government is in the process of putting together the discovery in the case, which is quite voluminous, to produce to the defense as soon as possible.

I'll note that prior to indictment, the government did make certain productions of discovery to the defense but will continue to gather discovery and make those productions as soon as possible.

THE COURT:  Can you give me and the defense team some idea of your timetable?

MR. ROBLES:  The government expects to be in a position, your Honor, to produce, I think, the bulk of the discovery in the next two weeks or so.  It's going to consist primarily of prior arrests and drug seizure files, search warrant applications and the returns in connection with those search warrants, including a large amount of electronic data from cell phones and iCloud accounts, social media accounts, also cell phone location data.  There are medical examiner reports, I think that were produced in the case, as well as

cell phone subscriber and call detail records, among other things in the case, your Honor.

THE COURT: Okay. Mr. Gunther, having heard that, and I guess having some familiarity with what has previously been produced, could you estimate how long you and your team would need to review this material after you receive it?

MR. GUNTHER: Your Honor, if it would be acceptable to the Court, there will definitely be suppression motions filed with regard to at least two of the searches. I think we're going to want the benefit of the discovery to brief those motions. If it would be acceptable to the Court, after we get sort of the first productions, perhaps we could agree with the government on a proposed schedule for these motions and propose them to the Court.

THE COURT: I don't have any problem. I'm just looking for my calendar that was here. All right. Essentially, what I need is an adjourn date for speedy trial requirements. So what I might suggest is that we now sort of agree on a date sufficiently out for you to have reviewed the material such that you know what motions you're going to make, and at that point, whatever date we set, on that date or before that, that you can agree with the government on a schedule for motions, send that to me, and that will provide the next speedy trial sort of gap. So what should we set as our first date?

MR. ROBLES: Your Honor, I would suggest 60 days from

today, and we can, of course, update the Court if more time is required for motions and the like.

THE COURT:  Well, in stages.  60 days for you to produce and for them to review?

MR. ROBLES:  Yes, your Honor.

THE COURT:  Okay.

MR. GUNTHER:  I think that works, your Honor.

THE COURT:  Is that good?

MR. GUNTHER:  Yes.

THE COURT:  All right.  So it's April, May.  Just give us any date around May 8th.

THE LAW CLERK:  Monday, May 9th.

THE COURT:  Okay.  So why don't we say Monday, May 9th.  All right.  And that will presumably be a report-back date with respect to the status of the review of discovery. Okay?

Mr. Gunther, any objection to excluding the speedy trial time until then?

MR. GUNTHER:  No, your Honor.

THE COURT:  Okay.  I find that a continuance until May 9th serves the ends of justice and outweighs the best interests of the public and the defendant in a speedy trial in that it will permit time for the government to make discovery and for the defendant to consider that discovery, particularly in connection with what motions to suppress they wish to make.

M38PSARA

Okay.  Is there anything further at this time?

MR. ROBLES:  Nothing from the government, your Honor. Thank you.

THE COURT:  Mr. Gunther?

MR. GUNTHER:  No, your Honor.  Thank you.

THE COURT:  Very good.  Thank you.  Okay.

Take care, Mr. Sarnelli.

THE DEFENDANT:  Thank you, your Honor.

(Adjourned)